# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 17-338V**
**(not to be published)**

* * * * * * * * * * * * * * * * * * * * * * * * *
ELLEN HALM, *
Petitioner, *
v. *
SECRETARY OF HEALTH AND HUMAN SERVICES, *
Respondent. *
* * * * * * * * * * * * * * * * * * * * * * * * *

Special Master Corcoran

Filed: December 19, 2017

Decision; Attorney's Fees and Costs; Influenza ("flu") Vaccine; Guillain-Barre Syndrome ("GBS")

*David Gregory Rogers,* Rogers, Hofrichter & Karrh, LLC, Fayetteville, GA, for Petitioner.

*Debra A. Filteau Begley*, U.S. Dep't of Justice, Washington, DC, for Respondent.

**FINAL ATTORNEY'S FEES AND COSTS DECISION**[1]

On March 13, 2017, Ellen Halm filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Petitioner alleged that the Influenza ("flu") vaccine she received on December 4, 2013, caused her to develop Guillain-Barré syndrome ("GBS"). Petition (ECF No. 1) ("Pet.") at 1. After Respondent filed the Rule 4(c) Report in this matter, and based upon my review of the case record, I issued a decision dismissing the case for insufficient proof on November 8, 2017. *See* Decision, dated Nov. 8, 2017 (ECF No. 26).

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act").

Petitioner has now filed a motion requesting final attorney's fees and costs, dated November 6, 2017. *See generally* Fees Application ("Fees App.") (ECF No. 24). Petitioner requests reimbursement of attorney's fees of $10,471.28 (with no cost reimbursement component). *Id*.

For the reasons stated below, I hereby **GRANT IN PART** Petitioner's Motion, awarding attorney's fees in the total amount of $9,610.80.

## Procedural History

This action has been pending for roughly nine months. Pet. at 1. The case originated with Ms. Halm representing herself as *pro se* Petitioner. An initial status conference was held in this matter on April 19, 2017, to provide Petitioner with an overview of how her claim would be resolved. In my Order thereafter, I expressed concern with the viability of Petitioner's claim due to possible onset and statute of limitations issues. *See* Order dated, Apr. 19, 2017 (ECF No. 9). I noted, however, that the medical records could shed more light on these issues. *Id.*

Petitioner's counsel, Mr. David Rogers, entered an appearance in the case in late May 2017. ECF No. 10. According to the billing record, Mr. Rogers began reviewing the file and obtaining medical records in early March 2017, and continued to work expeditiously as the case proceeded. The record reveals that medical records were filed in early August 2017. *See* generally Ex. 5 to Fees App., filed Nov. 6, 2017 (ECF No. 25-5).

An additional telephonic status conference was held on October 30, 2017, with both Petitioner and counsel present. During the conference, I reiterated my concerns regarding the overall viability of Petitioners' claim. *See* Order, dated Oct. 30, 2017 (ECF No. 22). I specifically explained to Petitioner that claims alleging a link between the flu vaccine and GBS are common in the Vaccine Program, but that in most successful cases onset of symptoms (given the acute nature of GBS) occurs no longer than 6-8 weeks after vaccination. Because Petitioner has alleged onset occurred 15 weeks after she received the flu vaccine, I cautioned her that the claim would likely be unsuccessful unless Petitioner could obtain highly persuasive medical or scientific support for such a late onset.

During the same status conference, Petitioner's counsel expressed his intent to withdraw from the case. I therefore set a deadline for him to do so, as well as a date to file a fees application. On November 6, 2017, Petitioner filed a motion to dismiss the case for insufficient proof. *See* Motion to Dismiss, dated Nov. 6, 2017 (ECF No. 23). I issued a decision granting Petitioner's Motion on November 8, 2017. *See* Decision, dated Nov. 8, 2017 (ECF No. 26). At the same time, Petitioner's counsel filed the present request for an award of attorney's fees and costs on November 6, 2017. *See generally* Fees App.

Petitioner specifically requests that her counsel be compensated at a rate of $424 per hour for work performed in 2017. Ex. 5 to Fees App. at 3. Additionally, for paralegal work, Petitioner requests compensation at a rate of $100 per hour for work performed in 2017. *Id.* Pursuant to the General Order No. 9 statement, Petitioner maintains that she has not incurred any personal costs related to this matter, and the fees request includes no other costs incurred in the case. ECF No. 25-6.

Respondent reacted to the motion on November 21, 2017, contesting Petitioner's entitlement to a fee award in the entirety on reasonable basis grounds. *See* Response, filed Nov. 21, 2017 (ECF No. 27) ("Response"). Respondent specifically maintains that Petitioner's GBS onset occurred over four months post-vaccination, and thus outside a medically appropriate timeframe. *Id.* at 5. Furthermore, Respondent argues that this claim is similar to other Program cases where onset occurred outside of the medically accepted timeframe, and fees were denied. *Id.* at 6; *see, e.g., Mounts v. Sec'y of Health & Human Servs*., No. 14-1219V, 2016 WL 4540344 (Fed. Cl. Spec. Mstr. July 27, 2016), *aff'd* 129 Fed. Cl. 570 (2016) (denying fees where onset occurred eight months after vaccination, and petitioner had no medical records supporting her own assertions that symptoms occurred earlier); *Brannigan v. Sec'y of Health & Human Servs*., No. 14-675, 2016 WL 3886297 (Fed. Cl. Spec. Mstr. July 17, 2016) (awarding attorney fees for roughly one year, or 45.7 hours of work, at which time the attorney should have determined that an eleven month onset was not medically acceptable); *but see Cottingham v. Sec'y of Health & Human Servs*., No. 15-1291, 2017 WL 1476242 (Fed. Cl. Spec. Mstr. Mar. 30, 2017) (denying fees where onset occurred four months after vaccination and petitioner had no medical records or treater statements associating the vaccine with any medical problem), *rev'd*, 2017 WL 4546579 (Fed. Cl. Oct. 12, 2017) ("Petitioner's failure to marshal more legal precedent and evidentiary support for th[e timeliness] aspect of her claim at the time her petition was filed does not mean the claim lacked a reasonable basis, warranting a denial of any fees").

Thereafter, on November 28, 2017, Petitioner filed a reply, arguing that her claim had reasonable basis due to assertions from treating physicians concerning the flu vaccine and its possible relation to the alleged GBS diagnosis. *See* Reply, filed Nov. 28, 2017 (ECF No. 28) ("Reply") at 2-3. Petitioner's counsel maintains that Petitioner originally filed her claim *pro se*,[3] based on assertions from her treating neurologist suggesting a possible connection between her GBS diagnosis and the flu vaccine received in December 2013. *See* Reply at 4-5. Based on these medically supported assertions, counsel argues that further investigation was needed. *Id.* at 5. Counsel maintains that upon entering his appearance, he took the appropriate steps to contact the

[3] Regardless, past Program cases suggest that a *pro se* petitioner's status does not exempt her from the reasonable basis determination. *See Cortez v. Sec'y of Health & Human Servs*., No. 09-176V, 2014 WL 1604002 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Rydzewski v. Sec'y of Health and Human Servs.*, No. 99-571V, 2008 WL 382930 (Fed. Cl. Spec. Mstr. Jan. 29, 2008).

treating physician and obtain medical records, noting for example, that it took him 45 days to schedule a phone conversation with the Petitioner's neurologist. *Id.* at 2-3. Furthermore, Petitioner maintains that the claim's deficiencies came to light only after speaking directly with the treating physician. *Id.* at 5 Overall, counsel argues that he acted expeditiously and made every effort to analyze the merits of the claim. *Id.* at 3.[4]

## Analysis

### I. Reasonable Basis Standard

I have in prior decisions set forth at length the relevant legal standards governing attorney's fees awards in unsuccessful cases, and in particular the criteria to be applied when determining if a claim possessed "reasonable basis."[5] *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906 at 4-5 (Fed. Cl. Spec. Mstr. May 26, 2016), *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs*., No. 14-1072V, 2015 WL 10435023, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner can receive a fees award even if his claim fails, but to do so he must demonstrate the claim's reasonable basis through some objective evidentiary showing and in light of the "totality of the circumstances." The nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing, is a relevant consideration. *Cortez v. Sec'y of Health & Human Servs*., No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs*., No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs*., 24 Cl. Ct. 255, 258–59 (1991)).

The Court of Federal Claims recently provided further illumination as to the standards that should be used to evaluate if the totality of the circumstances warrant a finding that reasonable

---

[4] Although Respondent's response also included a brief cite to the recent Federal Circuit decision regarding the relevance of a pending limitations period to the reasonable basis analysis *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632 (Fed. Cir. 2017), the discussion was limited to the decision's overall reaffirmation of the factors considered in a reasonable basis determination. Response at 3. Respondent did not contest reasonable basis on statute of limitations grounds, but Petitioner interpreted Respondent's response as contesting the appropriateness of a fee award based on the statute of limitations. Reply at 3-4. Thus, Petitioner further contended in her Reply that the present case is distinguishable from *Simmons* in that Ms. Halm filed her petition *pro se* based on assertions from her treating physician, thus, warranting further investigation. *Id.* at 4-6.

[5] Although good faith is one of the two criteria that an unsuccessful petitioner requesting a fees award must satisfy, it is an easily-met one – and Respondent does not appear to question it in this case. *Grice v. Sec'y of Health & Human Servs*., 36 Fed. Cl. 114, 121 (1996) (in the absence of evidence of bad faith, special master was justified in presuming the existence of good faith).

basis existed. *Cottingham v. Sec'y of Health & Human Servs.,* No. 15-1291V, 2017 WL 4546579, at *10 (Fed. Cl. Oct. 12, 2017). As Judge Williams therein stated, a special master should consider "the novelty of the vaccine, scientific understanding of the vaccine and its potential consequences, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim." *Id*. at *5.

## II. Petitioner's Claim Had Sufficient Reasonable Basis for a Fees Award

Based on my review of the case history, coupled with the evidence of counsel's course of representation of Petitioner as set forth in the billing records, I find that the claim did possess reasonable basis despite its ultimate weakness.

Petitioner alleged that she suffered from GBS as a result of a flu vaccination received in December 2013. Record evidence plainly establishes both her receipt of the vaccine as well as her GBS diagnosis. *See* Ex. 1.1 (ECF No. 15-1) at 6. Accordingly, fundamental elements of her claim had substantiation. However, the medical records establish that her symptom onset occurred roughly 15 weeks after vaccination, toward the end of March 2014. *See* Ex. 1.2 (ECF No. 15-2) at 2. While GBS-flu claims are common in the Vaccine Program, onset of GBS symptoms following the flu vaccine is usually quick, and with 6-8 weeks at the very most. Thus, the issue of the claim's reasonable basis turns on whether the onset issue should have been immediately viewed by counsel as an insurmountable obstacle to the claim's viability.

There is no doubt, as Respondent maintains, that other Vaccine Program decisions involving flu-GBS cases reveal the prevailing view that a medically acceptable timeframe for GBS onset after vaccination does not exceed two months. *See Perez v. Sec'y of Health & Human Servs.*, No. 14-0935V, 2016 WL 3092233, at *5 (Fed. Cl. Spec. Mstr. Apr. 15, 2016). At the same time, however, the relevant medical record contained statements by Petitioner's treating physician opining that there might be a connection between her diagnosis and the vaccination, noting that she received the vaccine and developed neurologic conditions in March 2013.[6] *See* Ex. 5 (ECF No. 15-5) at 7-8. Treater views are given consideration in Program cases, and therefore the existence of such evidence (if bulwarked by a persuasive medical opinion from a qualified expert) could possibly have supported a causation theory for a longer than usual onset.[7]

---

[6] This record mistakenly identifies January as the vaccine date, when in fact, (as the Petition states) Ms. Halm received the flu vaccine on Dec. 4, 2013. *See* Pet. at 1.

[7] Experts in the Vaccine Program have opined that autoimmune conditions in the GBS-flu context can manifest symptoms outside of the medically accepted timeframe. *See, e.g., Corder v. Sec'y of Health & Human Servs*., No. 08-228V, 2011 WL 2469736 (Fed. Cl. Spec. Mstr. May 31, 2011) (experts testified to four month GBS onset).

In addition, counsel acted appropriately in attempting to represent Petitioner while taking note of my concerns about the claim's viability. As the billing record reveals, Mr. Rogers expeditiously reviewed Petitioner's claim and worked to determine its likelihood of success. *See generally* Ex. 5 to Fees App. He obtained medical records in August 2017, reviewed those, and determined that additional records, plus a call with Petitioner's treating neurologist, were needed to further investigate the claim. *See* Fees App at 2; Response at 2-3. Counsel thus relied not simply on subjective statements of the Petitioner but on actual objective record proof, while subjecting the questionable or weaker kinds of that evidence to reasonable investigatory testing. He also sought dismissal promptly once I aired with him my concerns about the timeframe issue (concerns that his own investigation could not rebut).[8]

I agree with Respondent that this claim was not likely to overcome the onset issue, and therefore the claim was appropriately dismissed. But it has long been understood that the *success* of a claim is not determinative of the claim's reasonable basis, an inquiry which considers whether objective proof exists to support it. *See Livingston v. Sec'y of Health & Human Servs*., No. 12-268V, 2015 WL 4397705, at *6 (Fed. Cl. Spec. Mstr. June 26, 2015) ("An assessment of reasonable basis looks not to the likelihood of success but more to the feasibility of the claim." (internal quotation marks omitted)). Here, that test is satisfied, and therefore the case had sufficient reasonable basis through its dismissal for a fees award.

Furthermore, I do not find persuasive the cases cited by Respondent in support of his argument that fees should not be awarded in this case on reasonable basis grounds. For example, in *Mounts*, the special master denied fees because the petitioner provided no medical record evidence supporting her own assertions that onset occurred earlier than what the record plainly suggested, where as in this case there is some record support (albeit weak support) for Petitioner's position on onset. *Mounts*, 2016 WL 4540344, at *6-7. *Brannigan* is actually persuasive of my determination; in it the special master awarded counsel fees for approximately one year, or up until the time the special master determined reasonable basis had ended, as I am doing in the present case. *Brannigan*, 2016 WL 3886297, at *7 (awarding attorney fees for 45.7 hours of work, at which time the attorney should have determined that an eleven month onset was not medically acceptable). Finally, Respondent's reliance on the special master's position in *Cottingham* is misplaced, given that the decision to deny fees was later reversed by the Court of Federal Claims. *See Cottingham*, 2017 WL 4546579, at *10.

## III. Calculation of Fees Award

[8] I also take into account the fact that this appears to be Mr. Rogers's first Vaccine Program case. I would be less likely to find reasonable basis where an attorney who was well-versed with the Program, and/or demonstrably familiar with the kinds of evidence necessary to substantiate a flu-GBS claim, pursued this kind of claim despite awareness that onset timing issues suggested the claim would not succeed.

Determining the appropriate amount of a fees award is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down. *Avera*, 515 F.3d at 1348.

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate on the forum in which the relevant court sits (Washington, DC, for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the *Davis* exception). *Avera*, 515 F.3d at 1348 (Fed. Cir. 2008, citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). As the Federal Circuit stated in *Avera*, inclusion of the *Davis* exception ensures against a "windfall" – meaning paying a lawyer in a rural or less expensive locale more than she would otherwise earn, simply because she is litigating a case in a court of national jurisdiction. *Avera*, 515 F.3d at1349.

After the hourly rate is determined, the reasonableness of the total hours expended must be determined. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 205-06 (2009). This inquiry mandates consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley v. Eckerhart*, 461 U.S. 424, 437(1983).

With all of the above in mind, I turn to Petitioner's request for a rate of $424 per hour for Mr. Rogers for work performed in 2017. As established in *McCulloch*, an hourly rate of $424 is reserved for those attorneys with 30 or more years in the Vaccine Program. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *21 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). Mr. Rogers practices in Fayetteville, Georgia, a suburb of Atlanta. Although Petitioner has not specifically argued that Fayetteville, Georgia is an in-forum locale, Petitioner does request forum rates. *See* Ex. 4 to Fees App. (ECF No. 25-4). For support of his reasonable rate request, Petitioner cites to an article detailing, in his view, the prevailing market rate in Atlanta during 2011. *See* Ex. 1 to Fees App. (Ex. 25-1). However, the article cited by Petitioner is not entitled to significant weight in determining the appropriateness of awarding forum rates to Mr. Rogers, because it does not compare rates paid to Atlanta-area lawyers for work *comparable to Vaccine Program work*. *See Rivera v. Sec'y of Health & Human Servs*., No. 15-487V, 2017 WL 2460690, at *3 (Fed. Cl. Spec. Mstr. Apr. 20, 2017).

I find that Mr. Rogers is entitled to forum rates. Attorneys in Atlanta have been awarded *McCulloch* forum rates in the Program. *See Means v. Sec'y of Health & Human Servs*., No. 12-740V, 2017 WL 2856411, at *1 (Fed. Cl. Spec. Mstr. June 5, 2017). While Mr. Rogers practices in the Fayetteville office of Rogers, Hofrichter & Karrh, the firm maintains a branch office in Atlanta. More importantly, suburb locales can be considered equivalent to an in-forum locale where the suburb rates are not significantly disproportionate. *See Pelton v. Sec'y of Health & Human Servs.*, No. 14-674V, 2017 WL 3378773, at *4 (Fed. Cl. Spec. Mstr. July 12, 2017); *Echevarria v. Sec'y of Health & Human Servs.*, No. 15-100V, 2016 WL 6872975, at *3 (Fed. Cl. Spec. Mstr. Oct. 28, 2017). This determination is also consistent with my own decision finding that a suburb locale is entitled to forum rates based on the rates awarded to its counterpart city. *See Mikkelson v. Sec'y of Health & Human Servs*., No. 15-867V, 2016 WL 6803786, at * 2 (Fed. Cl. Spec. Mstr. Oct. 3, 2016).

Now that I have determined that the Mr. Rogers will receive in-forum rates, I must decide what rate within the *McCulloch* range is appropriate. Mr. Rogers has been practicing law for 27 years. However, this case appears to be Mr. Rogers's first case in the Vaccine Program. Under *McCulloch*, the rate range for an attorney of his experience (27 years) is $358-424. *See* Attorney's Forum Hourly Rate Fee Schedule: 2017.[9] Mr. Rogers requests a rate of $424 per hour for 2017, or at the highest end of the rate schedule. The requested rate will be adjusted, however, as it does not correspond with Mr. Rogers's limited Vaccine Program experience. Therefore, I will compensate Mr. Rogers at a rate of $390 per hour for the work completed in this matter.

The rate requested for paralegal time, $100 per hour for work completed in 2017, falls within the appropriate *McCulloch* rate range, and will not be altered.

I otherwise do not find any particular billing entries to be objectionable, nor has Respondent identified any as such. Accordingly, I award a total of $9,610.80 (representing $9,250.80 in attorney fees and $360.00 in paralegal fees), a total fees reduction of $806.48.

## CONCLUSION

For the aforementioned reasons, I award a total of $9,610.80 (representing solely attorney fees) as a lump sum in the form of a check jointly payable to Petitioner and Petitioner's counsel, David Rogers, Esq. In the absence of a motion for review filed pursuant to RCFC Appendix B, the

[9] The Attorney's Forum Hourly Rate Fee Schedule: 2017 is available on the Court's website (http://www.uscfc.uscourts.gov/node/2914).

clerk of the Court is directed to enter judgment herewith.[10]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the Parties' joint filing of notice renouncing the right to seek review.